The Chief Justice delivered the opinion of the court.
The action of trespass quare clausum fregit is a remedial instrument of the law for the redress of injuries done to real estate in possession. The possession of the party at the time of the injury of which he complains, is an essential pillar of the action. There are two kinds of possession ; in fact, and by relation of law. 'Possession in fact is where the party is in the actual use and enjoyment of the land or other real *198] estate at the commission of the injury. ^Possession by relation of law is where the party in actual possession becomes dispossessed, and is afterwards restored, by re-entry or in some other lawful manner; he is then, during the period which has .intervened between the dispossession and restoration, deemed in possession by relation of law. Possession by relation is not so efficacious as possession in fact, for while the latter affects all persons and reaches all purposes, the former extends, .according to some of the books, only to some purposes and persons. The early decisions in respect *235 to the purposes to which the possession by relation extends, and the persons against whom it may operate, or in other words in what cases it subsists as a legal, available possession to maintain the action of trespass guare clausum fregit, are not altogether uniform or consistent. Eolle in his abridgement citing from the year books, says, “ If a dissoissee re-enters, he shall have trespass against a stranger for a trespass done during the disseissin; for by re-entry he vests the possession in himself ab initio. So against a lessee, donee or feoffee of the disseissor. 2 Rolle abr. 554. In Holcomb v. Rawlins, Cro. Eliz. 540, it was held by three of the justices against Clinch, who was of a contrary opinion, that a disseissee by re-entry is remitted to his first possession, and as if he had never been out of possession, and that all who occupied in the mean time, by what title soever they came in, should answer unto him in trespass for their time. The same case is reported Moore 461. On the other hand, in 1 Rolles Rep. 101, it is said, “When the disseissee enters on a feoffee of the disseissor, he shall not have trespass against the feoffee, because he comes in by title; for relation, which is a fiction of the law, shall never make him who comes in lawfully to be a wrong doer. The action shall relate to punish the disseissor, but not the feoffee of the disseissor.” In Anderson 352, referring to certain of the year books, it is said, the disseissee on re-entry shall not punish the feoffee of the disseissor, nor his lessee by action of trespass. In Keilway 1, b. it is said, the disseissee on re-entry, shall not have an action of tresspass against any person but the disseissor or such persons as justify in his right, as his servants or by his command; that at common law, before the statute of Gloucester, the disseissee should not have damages against any person but the disseissor himself *■ but by that statute he may have damages against the mesne occupier, in case of the insufficiency of the disseissor; recoverable *however, under the statute, by assize only, and not [*199 by action of trespass, which remained as before the making *236 of the statute, and must be against the person who made the disseissin who shall answer for all the damages. In Hob. 98, similar doctrine is laid down as to the law both before and since the statute of Gloucester. In Liford’s ease 12 Jac. 1; the chief justice, after stating that there are great variances of opinions in the books, sums up the law on the subject in the following manner : “If one disseisses me, after my regress, the law, as to the disseissor and his servants, supposes .the freehold always continued in me ; but if my disseissor makes a' feoffment in fee, gift in tail, lease for life or years, and afterwards I re-enter, I shall not have trespass vi et armis against those who come in by title, for this fiction of the law that the freehold continued always in me shall not have relation to make him who comes in by title a wrong doer vi et armis.” “ The same law if my disseissor is disseissed and afterwards I re-enter, I shall not have an action of trespass against the second disseissor because the said fiction of law, as to action, extends only to my disseissor; and therefore I shall recover all the mean profits against my disseissor, his servants and others, who have committed the trespass by his command and in his right.” Buller in -his treatise, after stating the rule as laid down in Coke, suggests a doubt and thinks the reason of the law seems to the contrary. In Bacon's abr. tit. Trespass G. 40, it is said, the better opinion seems to be that the action of .trespass cannot be maintained, and the case of Symons v. Symons, Hil. 3 Car. 1 Hetley, 66, is cited. In Wickham v. Freeman, 12 John. 183, the Supreme Court of Hew York held that a re-entry after disseissin would not relate back so as to give the disseissee an action of trespass against a stranger, “.for it is a general rule with respect to the doctrine of relation, that it shall not do wrong to strangers.” In a subsequent case, however, in'the Supreme Court of the United States, Judge Washington in delivering the opinion of the court says, “ The doctrine laid down in Liford’s case that the disseissee can maintain trespass only against the *237 disseissor for the rents and profits, is, with great reason, overruled in the case of Holcomb v. Rawlins, Cro. Eliz, 540.” 8 Wheat. 75, Green v. Biddle. It may, however, be remarked that Holcomb v. Rawlins was decided in the time of Elizabeth, and Liford’s case in the subsequent reign of James the First. Amidst *the variety of doctrine [*200 to be found in the books, what was said in Green v. Biddle, would be entitled to great censideration, if the case before us required an opinion on the same point. A more narrow question is presented to us. In the doctrine and books already adverted to, it will be observed, that the first, or actual possession, prior to the period of possession by relation, was disturbed by act in pais, or disseissin without color of law or of legal procedure ; but in the case before us, the disturbance of the original or actual possession of Delzel Bacon, was under a legal proceeding, by writ of Hab. fac. possessions, sued out on judgment by default on ejectment. The doctrine of Menvil’s case 13 Co. 21, is therefore directly applicable. It was there resolved that when possession of land is obtained under an erroneous judgment, and, the judgment being set aside, the original possessor is restored ; he who thus is restored may maintain an action of trespass against him who obtained possession undor the erroneous judgment, and in such action shall recover all the mesne profits by whomsoever taken, and for intermediate injuries by whomsoever done; but he shall not have an action of trespass against a stranger or for an intermediate trespass on him in actual possession ; and he who had the intermediate possession under the judgment may, even after the restitution, recover in trespass for an injury while he was in the actual possession; and upon this principle that he is answerable for the mesne profits and intermediate injuries to him who was thus dispossessed and restored. I am not aware that the rule laid down in this case has been since contradicted or overruled in the courts in England; and there seems to be strong reason for it, especially for the *238 protection of one who comes in by title from him who obtained possession under the judgment, and who, being possessed by process of law, may be justly presumed by strangers to be rightfully possessed while the judgment and the possession under it continue in force. In Case v. De Goes, 3 Caines 261, Abraham Bull was put into possession by virtue of a writ of restitution upon a conviction of Case in forcible entry and detainer. • Under a license from Bull, the defendants in this action cut down and carried away a quantity of saw-logs after notice of title and being forbidden. The proceedings and writ were afterwards quashed for irregularity; and Case, being restored to possession, brought against the defendants an action of trespass; which *201] it was resolved he could not maintain *against them. This case was afterwards cited, and relied on in Van Brunt v. Schenck, 11 John. 384, and Wickham v. Freeman, 12 John. 184.
Upon the argument at the bar of the motion to set aside the verdict in the case before us, no great diversity seemed to exist between the counsel as to the principles of law; but the labor on each side was to settle the facts so that the legal principles might be applied and operate. Both sides admitted that David Sheppard obtained possession by virtue of an habere facias possessionem, upon a judgment by default in an action of ejectment, wherein Delzel Bacon was the tenant in possession, and this judgment and execution, after the commission of the acts for which the present suit was brought, were set aside, and the possession restored to Bacon by writ of restitution. On the part of Providence ^lieppard, the present defendant, it is insisted that he is a stranger to the parties in the action of ejectment, and to their proceedings; that he went into possession by title, under a. lease from David Sheppard, made after the execution of the writ of possession ; and the possession by relation cannot extend to him so as to render him liable to this action.
*239 On the part of Bacon, the plaintiff, it is insisted that the. lease was a mere device to cover the designs of the lessor and lessee; between whom a fraudlent collusion existed; that Providence was no stranger to the proceedings in ejectment; that they were really directed and conducted by him; that the name of David was only a mask, and that he was, to use the emphatic language of one of the counsel, “ the very disseissor.” 'Upon looking into the report of the trial, it is readily seen, as well as by the course of the argument here, that the cause mainly turns on these questions of fact. Their resolution, the rule of law being since Menvil’s case settled, determines the liability of the defendant. Now, the verdict of the jury will serve to establish the facts between these parties, and unless so manifestly against the weight of evidence, as for that reason to be liable to be set aside, must conclude them, and preclude the court from granting a new trial, if the questions of facts were submitted to the jury and acted on by them. But from the report of the trial, it appears these questions of fact were not submitted to the jury. After the evidence on both sides was closed, the counsel of the defendant *moved for a [*202 non-suit on the whole case, treating the cause as dependent on matter of law instead of fact; and as such, putting it to the court, instead of the jury. The motion was overruled. The judge then charged the jury that the defendant had not made out a justification in point of law, and that the principal question was one of damages. The questions of fact, therefore, whether the defendant is a stranger, or the real party ? Whether the defendant did or did not come in by title ? Whether the lease was a bona fide transaction, or a fraudulent device to give the color of legality to the acts of the defendant, were not put to the jury to decide? These were, I think, the principal questions, and to be solved antecedently to the matter of damages; which was only to be considered, if they wore determined against the defendant.
*240 The liability of the defendant in this action, depended on the determination of these questions; and the jury should, in my opinion, have been told, not that the defendant had not made out a justification in point of law, but that if these matters of fact were true, as assumed by the defendant, he had, and if not true, he had not, a valid defence in this action.
It was insisted on the argument here, that no jury could believe the lease was a serious matter whereby the defendant was to take'possession as a tenant; that the making of the lease directly after the execution of writ of possession; the immediate destruction pf the timber; the presence and interference of David Sheppard; and the consideration of $300 for a long lease, whereby the lessee was, among other things, authorized to cut and take the timber, obviously worth a greater sum, are palpable badges of collusion and fraud, sufficient to induce this court to refuse to interfere with the verdict. These considerations would now be entitled to, and would receive, their just weight, if they had been before the jury; but the jury was the proper tribunal to decide on the rights of the parties so far as they depended upon matters of fact; and the omission to-submit such questions to them, cannot, I think, be sustained by any reasoning, however cogent, to prove that the jury, if they had heard them, ought to, or would, have decided them in a particular way. If, indeed, the evidence was, in its nature, irresistible and conclusive, so that the jury would on another trial, be legally obliged to make a *203] particular *determination, we might be permitted to arrest the controversy here, and save the parties the expense of farther and unprofitable litigation. Such influence and effect are nqt, however, due to this evidence, whatever may be its weight, on which, for obvious reasons, I'abstain from saying anything more.
In my opinion, the present verdict ought to be set aside, and a new trial granted, in order that the questions of fact-may be submitted to a jury.