THE STATE, DEFENDANT IN CERTIORARI, v. THE PENN-SYLVANIA RAILROAD COMPANY, PROSECUTOR.

Submitted March 20, 1913—Decided June 3, 1913.

1. A railroad company may properly be indicted for a nuisance in emitting from its engines smoke and gases in greater quantities than required for the legitimate and proper use and operation of its railroad.

2. If an indictment is not sufficiently specific in its charges to enable the defendant to prepare his defence, a bill of particulars will be ordered.

3. Great particularity in the allegations of time and place is not required in an indictment for continuing nuisance.

4. The existence of other indictments for a similar offence at other times will not justify the quashing of an indictment for misconduct of the grand jury.

5. An indictment of a corporation for negligent emission of smoke will not be quashed on the ground that such emission may have been the individual act of employes without authority of the defendant.

6. The fact that a railroad is engaged in interstate commerce does not justify it in maintaining a public nuisance.

Three cases. *Certiorari* of indictments for nuisance and motion to quash said indictments.

Before Justices TRENCHARD, PARKER and VOORHEES.

For the prosecutor, *Vredenburgh, Wall & Carey.*

For the state, *Pierre P. Garven.*

The opinion of the court was delivered by

PARKER, J. The indictments are identical except as to dates, and charge that the prosecutor, "a corporation, late of the city of Jersey City, in the said county of Hudson, on the first day of June, in the year of our Lord one thousand nine hundred and ten, and thence continuously from that day up to and including the day of the finding of this indictment, then and there being the owners of a certain railroad running through the city of Jersey City aforesaid, commonly known as the Pennsylvania railroad, in the near neighborhood of divers public streets in the said city and county aforesaid, where divers good citizens are constantly passing and repassing and of divers dwelling-houses in the city and county aforesaid inhabited and occupied by divers other good citizens aforesaid and within the jurisdiction of this court, on the days and times aforesaid, did, unlawfully, negligently, unskillfully and unnecessarily conduct a certain building com-

monly called a roundhouse, and did then and there conduct, drive, run and move its locomotive engines over and along and upon said tracks of said railroad there at unseasonable hours in the morning and in the daytime and at late hours of the nights of the days aforesaid, by reason whereof divers noisome, unwholesome and dense smoke and noxious, penetrating and discoloring vapors and offensive odors were then and there on the said days and times emitted and issued out of and from the said locomotive engines and from said roundhouse in greater quantities than were required for the legitimate and proper use and operation of its railroad, so that the air on the several days and times aforesaid was thereby greatly filled and impregnated with said smokes, vapors, smells and stenches, and was rendered and became and was corrupted, offensive and unwholesome, and that the good people of the said city, in said state, residing in the said dwelling-houses near to the said railroad and said roundhouse on the several days and times aforesaid were and still are greatly annoyed, disturbed and incommoded in the use, occupation and enjoyment of their said dwelling-houses and greatly interrupted in the exercise and pursuit of their lawful business and transactions and deprived of their necessary sleep and rest and rendered and made in other respects uncomfortable and thereby also the good people of the said state and all persons then and there passing and repassing near the same, contrary to the form of the statute," &c.

A similar indictment was tried in *State* v. *Erie Railroad*, 54 *Vroom* 231, without question as to its sufficiency, at least in this court.

The first point made is that "the indictments are uncertain and ambiguous, and do not set forth facts with clearness sufficient to identify the accusations or to permit the defendants to prepare their defence." Specifically, it is argued that the defendant has numerous railroads running through Jersey City; but there is no evidence of this before us. Again, that the streets are not named or located nor the location of the roundhouse stated, nor the engines specified; and that no facts are stated to show that the emission of smoke, &c., was

unreasonable nor are the hours claimed to be "unseasonable" specified; and that the defendant is required to meet general allegations covering every day of an extended period, without notice of which days are to be particularly selected in the evidence.

It is sufficient to say that these indictments seem to follow closely the recognized precedents. Nuisance being usually a continuing offence, the general allegations of time are proper. *Bish. Dir. & F.*, §§ 81, 83. Generality in locating buildings and other landmarks is customary in an indictment for nuisance. *Id.*, §§ 828, 829. These questions are substantially disposed of in *State v. Uvalde Asphalt Co.*, 39 *Vroom* 512, where the matter is treated with some detail. As to the place where the nuisance was committed it is generally sufficient, if it be so stated, as to be within the county where the indictment is found. *Ibid.* The common law forms, in 3 *Chit. Crim. L.* *642 *et seq.*, are in consonance with this rule. The general allegation of "unseasonable hours" is supported by the precedents of indictments for keeping noisy dogs (*Id.* *647), pursuing the trade of a coppersmith (*Id.* *663), or a brazier (*Id.* *664). It is true that these precedents relate particularly to noises, but it is not perceived why the rest and sleep of the public may not also be disturbed by smoke and smells, which may of course be a nuisance even in the waking hours. The claim that the particular engines ought to be specified is trivial. If the indictment be so general that it does not convey sufficient information to defendant to enable him to prepare his defence, particulars will be ordered. *Rex v. Curwood*, 3 *A. & E.* 815; *Com. v. Snelling*, 15 *Pick.* 331; *State v. Hatfield*, 37 *Vroom* 443; *Bish. Cr. Pro.*, §§ 643, 645 (4). We deem the first point to be entirely without merit.

Next it is urged that "the frequency and persistency of the indictments and other forms of action against the defendants, demonstrate a concerted movement which is oppressive, unjust, unfair and negatives the impartial character of the indictments which is essential to their validity."

In other words, the mere fact that several indictments have been found covering successive or different periods of time, demonstrates on their face that the members of the grand jury have. disregarded their oath in returning them and have been influenced by unlawful motives. *State* v. *McCarthy,* 47 *Vroom* 295, is relied on. But in that case it was demonstrated by proof *aliunde* that the grand jury was unlawfully selected. The facts are stated on pages 299, 300. In the case at bar the selection of the grand jury. was not attacked and there is nothing before us but the finding of the three indictments and their contents. It would be absurd to say that from this one fact we should infer such misconduct on the part of the grand jury as to quash the indictments.

The next point rests on the well-settled proposition that defendant, a duly chartered railroad corporation, is entitled by law to emit smoke in operating its trains and thereby lawfully and necessarily cause inconvenience. That it is entitled to emit such smoke as is reasonably necessary in the conduct of its businesss is undeniable. *Beseman* v. *Pennsylvania Railroad,* 21 *Vroom* 235; 23 *Id.* 221; *Erie Railroad* v. *Jersey City,* 54 *Id.* 92. But, on the other hand, it is not entitled to emit smoke denser and more offensive in quality, and greater in volume, than reasonably required for the proper operation of the railroad. *Jenkins* v. *Pennsylvania Railroad,* 38 *Vroom* 331; 57 *L. R. A.* 309. If such acts result in a public nuisance, plainly an indictment will lie; and this is precisely what is charged in the indictments before us.

The fourth point made is that the acts complained of must have been those of defendant's servants for which it is not responsible criminally. This involves the culpability of a principal for the acts of an agent. In the case of natural persons, a principal is *prima facie* liable (criminally) for the acts of an agent done in a general course of business authorized by the principal. *R.* v. *Dixon,* 3 *M. & S.* 11; *Com.* v. *Nichols,* 10 *Metc.* 259; 1 *Russ. Cr.* 109, 110. It does not seem to be claimed, as was done in *Reg.* v. *Great North of England Railway Co.,* 9 *Q. B.* 315; 7 *E. R. C.* 466, that the

corporation is not liable to indictment for misfeasance; the proposition appears to be that because the emission of unnecessary smoke, &c., must have resulted from the operation of engines by the defendant's employes, the court should now rule that the responsibility is primarily that of such employes, and that on the trial it could not by any degree of proof be brought home to the employer. To dissent in either particular is to refuse to quash the indictment on the general ground stated. We dissent in both respects, at least to the extent of saying that the habitual discharge of unnecessary smoke and gases over an extended period is evidential not only of the commission of a nuisance, but as well of the knowledge by the corporate master thereof and its assent thereto. *Dierkes* v. *Hauxhurst Land Co.*, 51 *Vroom* 369; *S. C.*, after second trial, 54 *Id.* 623. But after all, this is a question relating to the trial and not to the sufficiency of the indictment. For all that appears, the case may be as suggested in the brief for the railroad company, viz., that the company directed its firemen to make as much smoke as possible.

The last point is that the indictment is an interference with interstate commerce. Many cases are cited by counsel, but we fail to find any authority holding that the fact of being engaged in interstate commerce (assuming such facts, which does not appear on the face of the indictments) confers immunity from criminal liability for the creation of a public nuisance. We do not consider that the point merits serious discussion.

There is nothing in the case requiring a resort to the rule last laid down in *State* v. *Johnson*, 53 *Vroom* 330, 332, that the discretion to quash an indictment on motion will not be exercised unless upon the clearest and plainest ground; for we find nothing even doubtful in these indictments.

The motions to quash will be denied, and the indictments returned for trial to the Hudson Quarter Sessions, to which they were referred by the Hudson Oyer and Terminer