IN THE MATTER OF THE PRESENTMENT MADE TO THE SUPERIOR COURT OF NEW JERSEY, HUDSON COUNTY, BY THE ADDITIONAL HUDSON COUNTY GRAND JURY ON OR ABOUT MAY 5, 1953.

LOUIS J. MESSANO, MOVANT-APPELLANT.

Argued May 24 and 31, 1954—Decided June 28, 1954.

Mr. *Victor S. Kilkenny* argued the cause for the movant-appellant (*Mr. Ralph P. Messano*, on the brief; *Mr. John B. Graf*, attorney).

Mr. *James Rosen* argued the cause for the State (*Mr. Frederick T. Law*, Prosecutor of Hudson County, attorney).

The opinion of the court was delivered by

BURLING, J. The appellant, Louis J. Messano, hereinafter called Messano, appealed from an order of the Assignment Judge of the Superior Court, Hudson County, filed on November 4, 1953, denying Messano's motion to expunge from the record an entire presentment of an additional grand jury of Hudson County, reported to the assignment judge, and ordered by him to be filed, on May 5, 1953. The appeal, addressed to the Superior Court, Appellate Division, was certified on our own motion prior to hearing there. *R. R.* 1:10–1(*a*).

Succinctly the chronology of events is as follows: On November 26, 1952 a grand jury list (150 names) was filed. A panel (35 names) for the grand jury was selected from this grand jury list. The grand jury for the second stated session of the September term 1952 was organized from that panel and was sworn on January 5, 1953.

About that time the Attorney-General assumed directly the responsibility of probing alleged waterfront criminality in Hudson County.

The Assignment Judge of the Superior Court, on January 9, 1953, on the motion of the Deputy Attorney-General by order fixed January 12, 1953, as the time for drawing a panel from the original grand jury list for an additional grand jury. See *N. J. S.* 2A :71–5, former *Rule* 2 :4–1, now *R. R.* 3 :3–1. The panel (35 names) was drawn and the assignment judge designated January 22, 1953 as the date for organizing the additional grand jury from that panel. On January 22, 1953 the State on motion challenged the array before the

jurors were sworn. Former *Rule* 2:4–2, now *R. R.* 3:3–2(*a*). Reasons for discharge of the panel (35 names) and of the balance of the grand jury list were assigned. The assignment judge discharged the additional grand jury panel (35 names) and set aside the balance of the then existing grand jury list. The assignment judge thereupon ordered the jury commissioners to prepare a new grand jury list of 150 names and fixed January 28, 1953 as the day for drawing a panel (35 names) therefrom for the additional grand jury. He further ordered the sheriff to return the panel of jurors so drawn from the new list on February 6, 1953, on which day the additional grand jury so summoned was organized and sworn.

On May 5, 1953 indictments, not against Messano, found by the additional grand jury were returned in open court to the assignment judge. The additional grand jury also returned in open court a presentment to the assignment judge. The presentment was examined by the assignment judge, who thereupon ordered it filed. See *In re Camden County Grand Jury*, 10 *N. J.* 23, 26 (1952).

Messano, on May 6, 1953, filed a notice of motion, without supporting affidavits, to expunge the entire presentment of the additional grand jury from the record. On argument on the motion on May 8, 1953, the assignment judge ordered Messano to produce affidavits in support of charges of bias, prejudice and malice laid to the additional grand jury by Messano on his motion. No such affidavits were filed. And counsel for Messano stated at the May 8, 1953 hearing that he had no proof that the grand jurors were politically motivated. At a hearing on the motion on June 5, 1953 counsel for Messano asserted "we are not going to file anything further. * * *" At a further hearing on June 26, 1953 counsel for Messano stated "* * * there wasn't any investigation of any grand jury. It was never my intention that that happen. * * *" By order filed November 4, 1953 the assignment judge denied Messano's motion to expunge the presentment, and this appeal ensued.

Adjective as well as substantive questions were advanced by Messano on this appeal. Messano contended, *inter alia,* that *N. J. Const.* 1947, *Art.* I, *par.* 8, forbids the simultaneous existence of two grand juries in one county. We find no merit in this contention. The constitutional provision invoked contains no such limitation. The additional grand jury is expressly authorized by statute. *N. J. S.* 2A:71–5, *supra.* Additional grand juries were not unknown at common law. See I *Chitty's Criminal Law* (3rd Am. from 2nd London ed., revised, 1836), pp. 157 (*157–158), 310 (*311); *Reg. v. McGuire,* 34 *N. B.* 430, 434–440, 4 *Can. Crim. Cas.* 12, 16 (*New Brunswick Sup. Ct.* 1898). The remaining procedural questions related to the entire personnel of the additional grand jury resulting from the discharge of the remaining personnel of the first grand jury list and the mode pursued to acquire the new grand jury list (150 names) and in the summoning of the new panel (35 names). These remaining adjective questions become academic by virtue of the following disposition of the case.

The substantive questions revolve about the determination whether a crime was charged against Messano in the presentment.

The presentment dealt with the grand jury's investigation of waterfront activities and detailed at length alleged facts purported to have been found by the jury in connection with Messano (in fairness to the movant Messano and consistent with the action hereinafter taken these allegations are not set forth in this opinion). These factors the grand jury said were "neglect amounting to non-feasance" of his duties as Director of Public Safety of Jersey City but stated that "generally" such alleged acts of nonfeasance "were not indictable by reason of the intervention" of the two-year statute of limitations. The presentment also made various recommendations which do not relate to Messano.

It was held in the *Camden County* case, *supra,* that "the criminal presentment disappeared in practice 20 or 30 years before the Constitutional Convention of 1844" (10 *N. J.,* at

*page* 44), although presentments as to public affairs with incidental reference to criminal activity had survived. Further, it was held that in drafting the New Jersey Constitution of 1947 the Convention members "knew that presentments in the criminal sense were obsolete" (10 *N. J.*, at *pages* 64–65). Chief Justice Vanderbilt in the *Camden County* case, *supra,* stated (10 *N. J.*, at *page* 66):

"There are many official acts and omissions that fall short of criminal misconduct and yet are not in the public interest. It is very much to the public advantage that such conduct be revealed in an effective, official way. No community desires to live a hairbreadth above the criminal level, which might well be the case if there were no official organ of public protest. Such presentments are a great deterrent to official wrongdoing. By exposing wrongdoing, moreover, such presentments inspire public confidence in the capacity of the body politic to purge itself of untoward conditions."

A fair reading of the opinion in the *Camden County* case, *supra,* discloses an obvious holding that a grand jury does not have the opportunity to elect to file a presentment rather than to find an indictment if it appears that a crime has been committed for which an indictment may be had. It was expressly held therein that "acceptance * * * of a presentment of public affairs is a judicial act. A reading of it may lead the court to give the grand jury further instructions with respect to the matters presented, which in turn may lead to further grand jury action. * * *" (10 *N. J.*, at *page* 67). In consonance therewith *R. R.* 3:3–9(c) effective September 9, 1953, was promulgated. *R. R.* 3:3– 9(c) reads as follows:

"(c) Promptly and before the grand jury is discharged, the Assignment Judge shall examine the presentment. If it appears that a crime has been committed for which an indictment may be had, he shall refer the presentment back to the grand jury with appropriate instructions. If it appears that the presentment is false, or is based on partisan motives, or indulges in personalities without basis, or if other good cause appears, he shall strike the presentment either in full or in part. As an aid in examining the presentment the Assignment Judge may call for and examine the minutes and record of the grand jury."

*R. R.* 3 :3–9 (*d*) also effective September 9, 1953, permits the filing of only such portions of the presentment as are not referred back to the grand jury for further action or as are not stricken under *R. R.* 3 :3–9 (*c*) *supra.*

The *Camden County* case, *supra,* holds that the then existing procedure contemplated suppression of portions of a presentment and reference back to the grand jury of matters contained therein for further action where it appears that a crime has been charged for which an indictment may be had. In passing it is noted that *R. R.* 3 :3–9, *supra,* is comparable upon this question with the holding in the *Camden County* case, *supra,* and could have been applied by the assignment judge in his determination on the motion to expunge (which, as above observed, culminated in his order of November 4, 1953—two months after the effective date of *R. R.* 3 :3–9, *supra*), dependent upon his determination of a criminal offense then indictable from the recitals of the presentment. From the recital in the presentment, the grand jury had apparently been advised by someone that a statute of limitation barred such action.

The substantive question on the adjective background resolves itself into a determination whether the additional grand jury found facts in the presentment which formed the basis of a charge of crime.

The allegations of the presentment tended to show criminal conduct on the part of Messano. It has been held that "Part of the duty of a city commission is to take suitable steps by way of prevention and prosecution of" criminal activity. *State v. Donovan,* 132 *N. J. L.* 319, 321 (*Sup. Ct.* 1945). *Cf. State v. Donovan,* 133 *N. J. L.* 432 (*E. & A.* 1945). The duties of a director of public safety are not explicitly detailed under the Walsh Act (under which Jersey City was governed), but the general purpose of the Walsh Act was to centralize responsibility in the commissioners. *Grogan v. De Sapio,* 11 *N. J.* 308, 322–323 (1953). The commissioner who as Director of Public Safety was given full authority over the department including the city police was therefore

responsible for prevention and prosecution of crime in the city.

■ It is not necessary that the breach of duty by a public official be expressly declared by the Legislature to be a crime. The violation of a duty to the public is itself a crime, for which the offender may be indicted at common law. *State v. Startup*, 39 *N. J. L.* 423, 425 (*Sup. Ct.* 1877). The duty may arise out of the very nature of the office. *State v. Weleck*, 10 *N. J.* 355, 356 (1952).

■ Official misconduct, whether actively criminal or such continuing gross neglect of duty in forbearing penal and suppressive measures against breach of the criminal law as amounts to nonfeasance, is indictable. See *State v. Witte*, 13 *N. J.* 598, 605–609 (1953).

■ The official misconduct charged to Messano constituted, if true, a continuing crime for which he could be indicted for two years after the last day on which he could have performed his duty to enforce the criminal laws against the offenders. *State v. McFeeley*, 136 *N. J. L.* 102, 106–107 (*Sup. Ct.* 1947). *Cf. State v. Witte, supra* (13 *N. J.*, at pages 605–607); *In re Pillo*, 11 *N. J.* 8, 17, 22 (1952).

For the reasons expressed herein the order of the Assignment Judge of the Superior Court, Hudson County, filed November 4, 1953, denying Messano's motion to expunge, is set aside and the matter will be remanded to the assignment judge for entry of an order striking the portions of the presentment of May 5, 1953 specifically relating to alleged indictable offenses by Messano but not striking matters of a non-indictable character, and for appropriate further reference for grand jury consideration to a current grand jury with appropriate instructions consistent with *R. R.* 3:3–9, *supra*, and with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN—6.

*For affirmance*—None.